UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ANDRE HARVEY                          CIVIL ACTION NO. 10-cv-1623

VERSUS                                JUDGE HICKS

M. RAY ANDERSON                       MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

Andre Harvey ("Plaintiff") is a self-represented prisoner who filed this civil rights action against Chaplain Ray Anderson at the David Wade Correctional Center.  Plaintiff alleges that Anderson removed him, for about 20 days, from the list of inmates approved to receive a religious diet.  He also alleges that he was denied access to the Islamic community chapel.  Anderson has filed a Motion for Summary Judgment (Doc. 21), and Plaintiff has not filed any response.  For the reasons that follow, it is recommended that the motion be granted and the complaint be dismissed with prejudice.

### Summary Judgment Standard

Summary judgment is proper when the movant can demonstrate that there is no genuine dispute of material fact and that he is entitled to judgment as a matter of law.  All facts and inferences must be construed in the light most favorable to the non-movant.  Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 248 (5th Cir. 2008).  But where the non-moving party fails to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial, no genuine dispute of material fact can exist. <u>McLaurin v. Noble Drilling (US) Inc</u>., 529 F.3d 285, 288 (5th Cir. 2008).

**Summary Judgment Record**

Plaintiff alleges in his amended complaint that Defendant, based on information provided by other members of the Islamic community, removed Plaintiff from the list of inmates approved for a religious diet.  Plaintiff complains that this was done without the opportunity for a hearing.  He filed an Administrative Remedy Procedure ("ARP") grievance that resulted in the reissue of a diet card about 20 days after removal from the list.  Plaintiff also alleges in his amended complaint that, during this same 20-day period, he was removed from the list that would have permitted him access to the chapel.  In another part of his amended complaint, he alleges that the denial of access to the chapel lasted more than six months.

Plaintiff's allegations are countered by competent summary judgment evidence submitted by Anderson. He testifies in an affidavit that he has worked as the chaplain at Wade for over 14 years.  The prison provides weekly Jummah services on Fridays, Ta'Leem classes on Saturdays, and daily Asr (prayer).  Inmate attendance is recorded on a sign-in sheet that is verified by an officer.

Anderson testifies that the prison allows inmates of the Muslim faith to receive a non-pork diet and benefit from fasting accommodations during Ramadan.  Anderson is in charge of creating a dietary roster for inmates of various faiths who are subject to food restrictions. He reports that members of the Muslim community have sometimes expressed concern that

inmates have publicly declared themselves to be Muslim to receive the religious diet but did not act consistently with the principles of the religion, which cast a negative light on the faith.  Anderson testifies that, in response to requests, he has at times conducted purges of the attendance and diet rosters.

Relevant to this case, Anderson was approached by inmates Grover Arnold and Henry Alfred regarding Plaintiff's non-attendance at services, failure to participate in Ramadan and related charitable giving, and failure to give the Muslim greeting to community members. The two men said that Plaintiff had been warned about his behavior and told that if he continued his name would be removed from the services and diet rosters.  They said that Plaintiff refused to meet with any member of the community to discuss the warning, and he continued his lack of attendance.

Anderson testifies that he spoke with Plaintiff and offered to work with him and the Muslim community to resolve their issues, but Plaintiff refused to discuss the matter.  A Jummata Discipline Board, which addresses concerns and interests of the prison Muslim community, recommended that Plaintiff be removed from the Muslim community.  Anderson noted that Plaintiff had attended Jummah 13 times in 2008, zero times in 2009 or 2010, and only once in 2011.  Plaintiff did not attend Ta'Leem classes or Asr prayer from 2009 until he was discharged from prison.  Anderson approved the Board recommendation and removed Plaintiff from the Jummah and religious diet rosters.

Anderson testifies that Plaintiff approached him several days later regarding his removal from the dietary roster, and it was the only time Plaintiff spoke to him on the issue.

Plaintiff then filed an ARP grievance and complained he was removed from the diet roster. Anderson testifies that he and the warden determined that the concerns of the community and the relief sought by Plaintiff could be achieved by preparing a new dietary roster that deleted any reference to a religious affiliation.  Plaintiff was then placed back on the roster for a non-pork diet.

Inmate Henry Alfred testifies in an affidavit that he serves on the Jummata Discipline Board of the Islamic community at the prison.  He feels that the placement of an inmate's name on the Jummah and diet rosters are public expressions of the inmate's faith.  If the inmate does not live according to Muslim tenets, it casts a negative light on the faith.  Alfred testifies that he became aware of Plaintiff's lack of attendance of services, lack of participation in other aspects of the faith, and the use of profanity and gambling.  He attempted to discuss the issues with Plaintiff, but Plaintiff refused.  Alfred told Plaintiff that the Board would recommend that his name be removed from the rosters, but Plaintiff did not say anything.

A special service was advertised to the members of the Muslim community for the purpose of discussing the roster removal.  Plaintiff did not attend the service, refused to meet with any member of the community, and continued to not attend religious events.  Alfred testifies that, during the time Plaintiff's name was removed from the diet roster, he and Plaintiff often ate in the cafeteria at the same time.  Alfred says that he never saw Plaintiff eat a pork plate.  He adds that he was in line with Plaintiff at times when he heard Plaintiff

simply say non-pork and receive the plate despite not being on the approved list.  On another occasion, the worker gave Plaintiff a non-pork plate without anything being said.

**Chapel Access**

It does not appear that Plaintiff or Anderson filed into the record a copy of Plaintiff's ARP grievance.  The record does contain the unit head's response to the grievance and Plaintiff's request for step two review.  Those materials do not include any reference to a claim of denial of access to the chapel.  They focus solely on the diet claim.  Anderson testifies that Plaintiff did not file an ARP grievance in connection with an inability to access the chapel or attend any of the services.[1]

Congress has commanded that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  A grievance must give prison officials a fair opportunity to address the problem that will later form the basis of the lawsuit.  Johnson v. Johnson, 385 F.3d 503, 516-17 (5th Cir. 2004).

---

[1] An exhaustion defense raised by prison officials ordinarily requires a better factual foundation, as discussed in Dupry v. Gehrig, 2009 WL 2579055 (W.D. La. 2009). The defense is usually supported by an affidavit from the official who administers the ARP system. The official testifies about the existence and terms of the ARP plan in place at the relevant time, attaches certified copies of any filing that the prisoner did make (together with responses thereto), or certifies that a diligent check of the records reveals no filing by the prisoner with respect to the claims at issue. The evidence will suffice in this case given the lack of opposition, but the moving party in future cases should better support the defense, on which the defendant bears the burden.

There is no evidence that Plaintiff filed a grievance that alerted officials to any complaint about his lack of access to chapel or religious services.  That issue is sufficiently distinct from the diet issue that it was not exhausted by the presentation of the diet-related grievance.  Plaintiff's complaint about the diet issue was resolved through the grievance process, except for Plaintiff's demand for compensation for alleged pain and suffering, so it is possible that the chapel access issue would also have been resolved if Plaintiff had properly presented to prison officials as required by the statute.  He did not do so, so the exhaustion defense presented by Anderson requires dismissal of this claim.

**Religious Diet Claim**

Plaintiff alleges in his complaint that he was removed from the diet list without a hearing.  The evidence shows, however, that Plaintiff was given a number of opportunities to discuss the concerns with the chaplain or religious leaders, and a community meeting was held to discuss the issue, but Plaintiff did not take advantage of those opportunities to defend himself before the removal took place.  Furthermore, limitations on religious services, especially for a short period of time, have been found not to present an atypical and significant hardship in relation to the ordinary incidents of prison life, so they do not trigger due process protection.  Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003); Samak v. Satcher, 2007 WL 2708284, *6 (E.D. Tex. 2007).

Plaintiff's complaint also invokes the First Amendment. To have the protection of the First Amendment's religion clauses, a prisoner's claims must be rooted in religious belief rather than philosophical, health, or other personal reasons.  Wisconsin v. Yoder, 92 S.Ct.

1526, 1533 (1972).  "[P]rison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic."  Cutter v. Wilkinson, 125 S.Ct. 2113, 2124 n.13 (2005) (RLUIPA case).  The summary judgment evidence shows that Chaplain Anderson, together with the Muslim community, conducted a reasonably thorough assessment and determined that Plaintiff did not observe the religion based on which he claimed a special diet.  Furthermore, the Fifth Circuit has generally determined that prisons need not respond to particularized religious dietary requests to comply with the First Amendment.  Baranowski v. Hart, 486 F.3d 112, 122 (5th Cir. 2007).  Summary judgment is appropriate for these reasons.

Plaintiff's diet concern was remedied within several days, and he continued to pursue his grievance only because of his stated belief that he had not been properly compensated for pain and suffering during those 20 or so days.  Henry Alfred's testimony suggests that Plaintiff continued to receive the Muslim diet during that time, despite his removal from the list. In any event, the lack of a physical injury related to the claim would prevent Plaintiff from obtaining compensatory damages even if he were to prevail on the merits.  42 U.S.C. § 1997e(e); Delafosse v. Stalder, 169 Fed. Appx. 922 (5th Cir. 2006) (the statute precluded compensatory damages on a claim of denial of religious diet).

Accordingly,

**IT IS RECOMMENDED** that M. Ray Anderson's **Motion for Summary Judgment (Doc. 21)** be **granted**, and the Plaintiff's complaint be **dismissed with prejudice**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 16th day of August, 2012.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE